FILED
2015 Sep-28 PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS O'SHEA, as Trustee of the Trust of Thomas and Ann O'Shea; THOMAS O'SHEA, <br><br> Plaintiffs, <br><br> vs. <br><br> LEADER BULSO & NOLAN, PLC; EUGENE N. BULSO, <br><br> Defendants. <br><br> EUGENE N. BULSO; LEADER BULSO & NOLAN, PLC., <br><br> Counter Claimants, <br><br> vs. <br><br> THOMAS O'SHEA; THOMAS O'SHEA, as Trustee of the Trust of Thomas and Ann O'Shea, <br><br> Counter Defendants. | CASE NO. 2:14-CV-1955-SLB |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motion to Dismiss for Failure to State a Claim. (Doc. 7.)[1] Plaintiffs have sued defendants alleging elder abuse in violation of California law. Defendants ask the court to dismiss plaintiffs' Complaint "because the sole claim

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

asserted therein, a claim under a California statute titled 'Elder Abuse and Dependent Adult Civil Protection Act,' is barred by the Alabama Legal Services Liability Act (the 'ALSLA'), Ala. Code § 6-5-570 *et seq*." (*Id*. at 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss for Failure to State a Claim, (doc. 7), is due to be granted in part and denied in part.

### I. MOTION TO DISMISS STANDARD

Defendants has moved to dismiss plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b) provides: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the [defense of failure to state a claim upon which relief can be granted] by motion . . . . A motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The defense of "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Because this Motion to Dismiss was filed after defendants filed their Answer, it is not a Motion to Dismiss pursuant to Rule 12(b); rather, it is properly considered a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

Rule 12(c) provides, "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the

pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. In determining whether a party is entitled to judgment on the pleadings, [the court must] accept as true all material facts alleged in the non-moving party's pleading, and [it must] view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, No. 13-13853, 2014 WL 7229271, *4 (11th Cir. Dec. 18, 2014)(quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)(citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)))(internal quotations and citations omitted). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014)(internal citations and quotations omitted).

## II. STATEMENT OF FACTS

Plaintiffs' Complaint contains the following allegations of fact, which the court has accepted as true for purposes of deciding defendants' Motion to Dismiss/Motion for Judgment on the Pleadings:

> 6. [Defendants] represented Plaintiffs and other entities and persons with whom Plaintiff was associated and/or related. Due to the trust and confidence afforded [Defendants] by the Plaintiffs and at the recommendation of [Defendants], the representation was general and resulted in litigation in courts in Alabama, Hawaii and California, including: *San Francisco Residence Club et al. v. Baswell-Guthrie, et al.*, United States District Court, Northern District of Alabama, Case Number: 5:09-cv-00421-CLS; *San Francisco Residence Club, Inc. et al v. Park Tower, LLC*, United States Case District Court, Northern District of Alabama, Case

Number: 5:08-cv-01423-AKK; *Kennedy Funding, Inc. v. White Sands Estates, LLC et al*, U.S. District Court; District of Hawaii, Case Number: 1:09-cv-00191-JMS-BMK; *San Francisco Residence Club, Inc. et al v. Amado, et al.*, United States District Court, Northern District of California, Case Number: 3:09-cv-02054-RS, and litigation in the Superior Court of California, Contra Costa County.

7. During the [course] of the representation, [Defendants] intentionally and without authority diverted funds that were paid in settlement for the benefit of Plaintiffs, and others, in direct contradiction of Plaintiff's instructions and wrongfully took those funds, which were in part Plaintiffs', for the improper benefit of [Defendants]. Plaintiffs, and the other associated . . . clients [of defendants], negotiated with Coldwell Banker, a defendant in the cases, and on or about May 24, 2011, instructed Coldwell Banker that the Coldwell Banker settlement money should be paid by check and sent to Plaintiffs and related individuals and entities in the Alabama cases, including Plaintiffs herein.

8. Without authorization, [Defendants] then represented to Coldwell Banker that the Coldwell Banker Settlement money should be wired to the ... Law Firm's trust fund in Tennessee. As a result of Defendants' wrongful instruction to Coldwell Banker, Coldwell Banker wired the settlement funds to [Defendants] on or about June 8, 2011. [Defendants] managed to obtain the Coldwell Banker Settlement money before the settlement agreement with Coldwell Banker was executed. Faced with this fait accompli, on or about June 12, 2011, Plaintiffs' representative instructed that the money should be retained in the . . . Law Firm's trust account while the dispute was resolved. [Defendants] ignored that instruction and unilaterally withdrew money from the . . . Law Firm trust account or failed to deposit the funds into the trust account and applied it against moneys [Defendants] claimed [were] owed by Plaintiffs and others, including application to those sums that are the subject of the allegations herein regarding overbilling.

9. During the course of [Defendants'] representation of Plaintiffs, [Defendants] overcharged Plaintiff, and the other associated . . . clients [of Defendants], for services and, upon information and belief, billed Plaintiff for time that was not reasonable, necessary and/or authorized. Within approximately a twenty-four month period, Bulso and one associate charged Plaintiffs, and the other associated . . . clients [of Defendants] nearly $2,000,000 (some minor charges were allegedly incurred by a few other lawyers or staff). [Defendants] represented to

Plaintiffs, that Plaintiff[s'] claims were worth the funds charged, plus millions, yet after millions of dollars were billed and paid to [Defendants], [Defendants] abandoned Plaintiffs and recommended Plaintiffs, and the other associated . . . clients [of Defendants], settle for "whatever amount they could get," even suggesting Plaintiff, and the other associated . . . clients [of Defendants], accept $150,000 from Wilmer & Lee in full and final settlement.

10.   [Defendants] also has improperly placed a lien on money rightfully due Plaintiffs.  On or about [October] 28, 2011, [Defendants] filed a notice of attorney's lien in the Alabama cases.[2]  [Defendants have] placed a lien on funds that belong to Plaintiffs for amounts allegedly due by other individuals and entities.

11.   Plaintiff Thomas O'Shea, individually and as Trustee, is, and at all relevant times was an elder, over the age of 65.  [Defendants were] aware that Thomas O'Shea was an elder as is evidenced by, among other things, [Defendants'] pursuit of Thomas O'Shea's elder abuse claims against the defendants in the underlying cases.

. . .

14.   Defendants and each of them, took, hid, appropriated, obtained, retained and/or assisted in taking, hiding, appropriating and retaining, Plaintiff's personal property and/or the Trust property as alleged hereinabove for a wrongful use and/or with the intent to defraud.

---

[2]*See San Francisco Residence Club v. Baswell-Guthrie*, Case No. 5:09-CV-0421-CLS, doc. 177; *San Francisco Residence Club, Inc. v. Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 292.

(Doc. 1 ¶¶ 6-11, 14 [footnote added].)  Plaintiffs allege that defendants' alleged wrongdoing constitutes "financial abuse of an elder" pursuant to Cal. Welfare & Inst. Code §§ 15610.07(a),[3] and 15610.30.[4]

### III. DISCUSSION

Defendants argue, "Because this action arises out of defendants' legal representation of Plaintiffs in Alabama, Plaintiffs' sole and exclusive claim against defendants is under the Alabama Legal Services Liability Act [ALSLA].  Plaintiffs may not assert a claim against defendants under the California Elder Abuse and Dependent Adult Civil Protection Act for representation defendants provided in Alabama."  (Doc. 7 ¶ 5.)  Plaintiffs contend their "claims include claims relating to services rendered to Plaintiffs' outside of Alabama and cannot be subject to the [ALSLA].  Plaintiffs'

---

[3]Section 15610.07(a) defines "abuse of an elder or a dependent adult" to include "financial abuse."  Cal. Welfare & Inst. Code § 15610.07(a).

[4]According to § 15610.30 –

(a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:

(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

Cal. Welfare & Inst. Code § 15610.30 (a).

claims also involve conversion and breaches of duties outside of any legal services rendered in Alabama." (Doc. 10 ¶ 3.)

> Section 6-5-573, Ala. Code 1975, [ALSLA] provides: "There shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein."
>
> Section 6-5-572(2), Ala. Code 1975, defines a "legal service provider" as
>
> "[a]nyone licensed to practice law by the State of Alabama or engaged in the practice of law in the State of Alabama. The term legal service provider includes professional corporations, associations, and partnerships and members of such professional corporations, associations, and partnerships and the persons, firms, or corporations either employed by or performing work or services for the benefit of such professional corporations, associations, and partnerships including, without limitation, law clerks, legal assistants, legal secretaries, investigators, paralegals, and couriers."
>
> Section 6-5-572(1), Ala. Code 1975, defines "legal service liability action" as
>
> "[a]ny action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damage[ ] or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future."

*Roberts v. Lanier*, 72 So. 3d 1174, 1180-81 (Ala. 2011).

"The [ALSLA] is very broad. It creates one form of action against any 'legal service provider' and exclusively governs any and all actions brought against a legal service provider for damages. The ALSLA embraces all claims, based on either contract or tort, and supersedes any inconsistent provisions of the law." *Mississippi Valley Title Ins. Co. v. Hooper*, 707 So. 2d 209, 217 (Ala. 1997)(Bryan, Special Justice, concurring in the result). However, the definition of legal services provider is limited. The Alabama Supreme Court has held, "The plain language of § 6-5-572(2), as well as that of the other portions of the ALSLA, clearly indicates that the Legislature intended for the ALSLA to apply only to lawyers and to entities that are composed of members who are licensed to practice law within the State of Alabama." *Alabama Educ. Ass'n v. Nelson*, 770 So. 2d 1057, 1059 (Ala. 2000). Also, an attorney not licensed to practice law in Alabama, but associated with an Alabama attorney, may "meet[ ] that part of the definition of a 'legal service provider' that includes 'the persons, firms, or corporations either employed by or performing work or services *for the benefit of* such professional corporations, associations, and partnerships . . . ,'" if the relationship between the foreign attorney or firm and the Alabama attorney or firm constitutes a joint venture. *Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 678 (Ala. 2009)(citing 46 Am. Jur. 2d *Joint Ventures* § 50 (2006))(emphasis in *Wachovia Bank*). Moreover, the ALSLA covers claims encompassing legal services provided by an attorney while admitted pro hac vice. *See Lanier*, 72 So. 3d at 1183 n.6 ("It seems clear that, after he obtained pro hac vice status, [defendant, an attorney not licensed to practice law in Alabama,] qualified as a

'legal-service provider' under the ALSLA.") Alabama has not decided whether "claims aris[ing] out of alleged misconduct that is said to have occurred *before* [an attorney not licensed to practice law in Alabama] obtained [pro hac vice] status," are subject to the ALSLA. *Id*. The court has found no case discussing the applicability of the ALSLA to a legal-services liability action based on a breach of the standard of care arising after a foreign legal services provider has withdrawn from his representation in an Alabama proceeding in which they were granted pro hac vice status. Given the Alabama courts' holding limiting the application of the ALSLA with regard to foreign attorneys, the court finds that the ALSLA does not apply to claims against a foreign attorney, who is not working with a licensed Alabama attorney, based on acts or omissions occurring before or after the foreign attorney's pro hac vice representation of plaintiff in an Alabama proceeding.

Defendant Bulso is an attorney licensed to practice law in Tennessee. He and Steven Nieters, both attorneys with defendant Leader, Bulso & Nolan, were admitted pro hac vice on February 24, 2009, in the *Park Tower* litigation. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 43. On October 28, 2011, Bulso and Nieters moved to withdraw from both the *Park Tower* and the *Baswell-Guthrie* cases; their motions were granted on November 3, 2011. *See Park Tower*, Case No. 5:08-CV-1423-AKK, doc. 291 and stamp ruling of November 3, 2011; *Baswell-Guthrie*, Case No. 5:09-CV-0421-CLS, doc. 177 and stamp ruling of November 3, 2011.

Therefore, the court finds that defendants' Motion to Dismiss is due to be denied as to plaintiffs' elder-abuse claims based on defendants' alleged wrongdoing arising out of the

attorney/client relationship that occurred before or after defendants' appearance pro hac vice in either the *Baswell-Guthrie* or *Park Tower* cases in this court and granted as to any claim of wrongdoing arising out of the attorney/client relationship that occurred during defendants' appearance pro hac vice in either the *Baswell-Guthrie* or *Park Tower* cases in this court,[5] including claims based upon defendants' diversion and retention of the Coldwell Banker settlement proceeds.[6]

In this case, plaintiffs have alleged that defendants over-billed plaintiffs, misrepresented the value of plaintiffs' claims, abandoned plaintiffs' during the litigations, and filed an attorneys' lien in the Alabama cases. The court finds that plaintiffs have not alleged sufficiently specific facts to allow the court to determine based only on the pleadings whether this alleged misconduct occurred during the time defendants' were appearing pro hac vice in the Alabama cases and, if so, to what extent the claims relate to the provision of legal services in the Alabama cases. Therefore, the court cannot determine if these allegations of wrongdoing are subject to the ALSLA or actionable under the California elder abuse statute.

---

[5] All claims based upon the defendants' representation of plaintiffs in the *Park Tower* litigation are pending in *San Francisco Residence Club v. Leader Bulso & Nolan*, Case No. 2:14-CV-01953-SLB. All claims based upon the defendants' representation of plaintiffs in the *Baswell-Guthrie* litigation are pending in *San Francisco Residence Club v. Leader Bulso & Nolan*, Case No. 2:14-CV-01954-SLB.

[6] Plaintiffs – along with San Francisco Residence Club, Inc.; Anne O'Shea as Trustee of the Trust of Thomas and Anne O'Shea; Kate Larkin Donahue, TAK Tech Point; and KKA CAS – have alleged identical claims of wrongdoing regarding the Coldwell Banker settlement proceeds in Case No. 2:14-CV-1954-SLB, doc. 1 ¶¶ 12, 33.

The court will order plaintiffs to file an amended Complaint setting forth only those claims of wrongdoing occurring before defendants were admitted pro hac vice in the *Baswell-Guthrie* and *Park Tower* cases or after defendants withdrew from the Alabama cases, and plaintiffs shall not include any claim of wrongdoing based on conduct related to or encompassing legal services provided in either of Alabama actions.  Such Amended Complaint shall specify the time and place of each alleged wrongful act or omission to the extent possible.

**DONE** this 28th day of September, 2015.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE